## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| ENVIRONMENTAL LAW & POLICY CENTER and NATIONAL WILDLIFE FEDERATION, ) ) ) ) ) | |
| Plaintiffs, ) | No. 1:18-cv-126260-TLL-PTM |
| v. ) | |
| UNITED STATES COAST GUARD, REAR ADMIRAL JOANNA M. NUNAN, in her official capacity as the Ninth Coast Guard District Commander, ) ) ) ) ) ) | |
| Defendants. ) | |

### ANSWER

The United States Coast Guard ("USCG"), and Rear Admiral Nunan (collectively, "Defendants"), by and through their undersigned counsel, respond to the Complaint for Declaratory Relief ("Complaint") filed by the Environmental Law & Policy Center ("ELPC") and the National Wildlife Federation ("NWF") as follows:

The complaint seeks judicial review under the Administrative Procedure Act and the Oil Pollution Act of 1990 of the USCG's approval of portions of the Northern Michigan Area Contingency Plan. Because the Complaint involves judicial review of agency action, review is limited to the administrative record

compiled by the Defendants.  5 U.S.C. § 706.  Although the allegations of fact in the Complaint and any responses contained in this Answer are not part of the record on judicial review, the Defendants respond below to the numbered paragraphs of the Complaint in the corresponding numbered paragraphs in this Answer.

1.    Defendants admit that Congress enacted the Oil Pollution Act of 1990 as a response to the Exxon Valdez oil spill in 1989 and for additional reasons. Defendant denies the remaining allegations of Paragraph 1.

2.    The allegations of Paragraph 2 are legal conclusions to which no response is required.

3.    Defendants admit the allegations of Paragraph 3.

4.    Defendants admit that former USCG Commandant Adm. Paul Zukunft has testified under oath before the United States Senate Commerce, Science, and Transportation Committee on multiple occasions.  Defendants admit that on November 16, 2017, Admiral Zukunft testified before the United States Senate Commerce, Science and Transportation Subcommittee on Oceans, Atmosphere, Fisheries, and the Coast Guard.  Defendants admit that at this hearing, Senator Gary Peters of Michigan stated the following to Admiral Zukunft:

Also, Admiral, back in March we discussed the concerns about oil and freshwater and given the fact that the Coast Guard has primary responsibility to oversee a clean up and the concern that I have and many folks in my state have regarding an oil spill, particularly in the Strai[sic]ts

of Mackinac and the devastating impact that would have on the lakes and also the fact that we don't have a whole lot of research into how we clean up freshwater.

We have a great body of work in terms of salt water, we have a lot of proven techniques to clean it up in salt water and salt water has the advantage of having microorganisms that actually break down oil that do not exist in freshwater. So, it creates a tremendous challenge for clean up.

Since we've talked in March, could you give me an update on the research being done at the Coast Guard to deal with freshwater spills and what do we need? What additional resources do you need because in March you mentioned you were not comfortable that we could clean up a major spill in the Great Lakes now, given current state of resources, what do you need and how concerned are you?

Defendants admit that in response, Admiral Zukunft replied with the

following:

Yes. I can't put a dollar figure on it, but we do need to make further investments in our research and development. We did receive a significant plus up this last year, but that was to address unmanned aerial systems or remotely piloted systems, if you will.

We are paying very close attention to two anomalies when it comes to oil spill recovery. Oil in an iced environment and then tar sand that has the specific gravity of water and it sinks. And then, how do you recover that? We're using a facility in Leonardo, New Jersey. It's a several hundred yard long tank that you can actually spill water -- oil in.

You can use different water, you can use fresh, salt. You can freeze it. So, we've been using that facility to do proof of concept work. We recognize that there are research labs and subject matter experts in the Great Lakes. And so, if we're going to do research and development as we look at our area contingency plans in an oil spill, all things are local.

And so, we need to make sure that we have full inclusiveness with subject matter experts who are very familiar with this. You've got water

intakes, drinking water for communities and the like. What is -- do you use a dispersant or not and what are the harmful effect of doing that.

So, there's still a lot of science that needs to be done, and meanwhile, we have pipelines crossing the lakes and I will go on the record to say that the Coast Guard is not Semper Paratus for a major pipeline oil spill in the Greater Lakes. More science needs to be done in that regard and I know you understand that quite well.

Defendants further state that Admiral Zukunft's complete and entire testimony during this session speaks for itself.

5.      Defendants admit the allegations of Paragraph 5.

6.      Defendants admit the Line 6B oil pipeline ruptured in Marshall, Michigan, in 2010.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6, and on that basis deny them.

7.      Defendants admit that the Enbridge Line 5 oil pipelines that cross the Straits of Mackinac are approximately 65 years old.

8.      The allegations of Paragraph 8 are legal conclusions to which no response is required.

9.      The allegations of Paragraph 9 are legal conclusions to which no response is required.

10.     Defendants deny the allegations of Paragraph 10 and deny any violation of law.

11.     Defendants deny the allegations of Paragraph 11 and deny any violation of law.

12.     The allegations of Paragraph 12 are legal conclusions to which no response is required.

13.     The allegations of Paragraph 13 characterize the relief requested by ELPC and NWF in this action, and no response is required.  Defendants deny any violation of law and deny that ELPC or NWF is entitled to the requested relief or any other relief whatsoever.

14.     The allegations of Paragraph 14 characterize the relief requested by ELPC and NWF in this action, and no response is required.  Defendants deny any violation of law and deny that ELPC or NWF is entitled to the requested relief or any other relief whatsoever.

15.     The allegations of Paragraph 15 are legal conclusions to which no response is required.

16.     Defendants deny the allegations of Paragraph 16 and deny any violation of law.

17.     The allegations of Paragraph 17 are legal conclusions to which no response is required.

18.     The allegations of Paragraph 18 are legal conclusions to which no response is required.

19.     The allegations of the first sentence of Paragraph 19 set forth ELPC and NWF's characterization of this action, to which no response is required. Defendants admit that the USCG has an office under the control of Sector Sault Ste. Marie at 145 Water St., Alpena, Michigan, which is within the Eastern District of Michigan.  Defendants deny that the portion of the Straits of Mackinac across which Enbridge operates Line 5 is located in this district.  Defendants deny that the Coast Guard's approval of the Northern Michigan Area Contingency Plan occurred in this district.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20, and on that basis deny them.

21.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, and on that basis deny them.

22.     Defendants admit that the USCG is a federal agency responsible for oil spill prevention and response in United States waters.  Defendants deny the allegation in the last sentence of Paragraph 22 that the Coast Guard approves Facility Response Plans such as the one at issue in this case, which is approved by the Pipeline and Hazardous Materials Safety Administration (PHMSA) of the U.S. Department of Transportation.  Defendants admit the remaining allegations of Paragraph 22.

23.     Defendants admit the allegations of Paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24, and on that basis deny them.

25.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25, and on that basis deny them.

26.  Defendants admit that a "worse case discharge" in the geographic area at issue may have environmental and other impacts. Defendants deny all other allegations and deny any violation of law.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27, and on that basis deny them.

28.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28, and on that basis deny them.

29.     Defendants admit that a "worse case discharge" in the geographic area at issue may have environmental and other impacts. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29, and on that basis deny them.

30.      The allegations of Paragraph 30 are legal conclusions to which no response is required.

31.     Defendants deny the allegations of the first sentence of Paragraph 31 and deny any violation of law.  Defendants admit that a breach in an oil pipeline

operating in the Straits of Mackinac that resulted in a discharge of oil from the pipeline would discharge into at least one of the Great Lakes.

32.   Defendants deny the allegations of Paragraph 32 and deny any violation of law.

33.   The allegations of Paragraph 33 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 33 and deny any violation of law.

34.   The allegations of Paragraph 34 are legal conclusions to which no response is required.

35.   The allegations of Paragraph 35 are legal conclusions to which no response is required.

36.   The allegations of Paragraph 36 are legal conclusions to which no response is required.

37.   The allegations of Paragraph 37 are legal conclusions to which no response is required.

38.   The allegations of Paragraph 38 are legal conclusions to which no response is required.

39.   The allegations of Paragraph 39 are legal conclusions to which no response is required.

40.    The allegations of Paragraph 40 are legal conclusions to which no response is required.

41.    The allegations of Paragraph 41 characterize the relief requested by ELPC and NWF in this action, and no response is required.  Defendants deny any violation of law and deny that EPLC or NWF is entitled to the requested relief or any other relief whatsoever.

42.    The allegations of Paragraph 42 are legal conclusions to which no response is required.

43.    The allegations of Paragraph 43 are legal conclusions to which no response is required.

44.    The allegations of Paragraph 44 are legal conclusions to which no response is required.  The allegations of Paragraph 44 also quote the Administrative Procedure Act, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

45.    The allegations of Paragraph 45 quote the Clean Water Act, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

46.    Defendants admit the allegations of Paragraph 46.

47.     Defendants admit that Congress enacted the Oil Pollution Act of 1990 as a response to the Exxon Valdez oil spill in 1989 and for additional reasons.

48.     The allegations of Paragraph 48 are legal conclusions to which no response is required.

49.     The allegations of Paragraph 49 are legal conclusions to which no response is required. The allegations of Paragraph 49 also cite the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

50.     The allegations of Paragraph 50 are legal conclusions to which no response is required.  To the extent the allegations are inconsistent with the Oil Pollution Act of 1990, the allegations are denied.

51.     The allegations of Paragraph 51 are legal conclusions to which no response is required. The allegations of Paragraph 51 also cite the Oil Pollution Act of 1990 and Executive Order 12777, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statute and order, the allegations are denied.

52.     The allegations of Paragraph 52 are legal conclusions to which no response is required. The allegations of Paragraph 52 also cite the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the

extent the allegations are inconsistent with the cited statute, the allegations are denied.

53.    The allegations of Paragraph 53 are legal conclusions to which no response is required. The allegations of Paragraph 53 also purport to quote the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

54.    The allegations of Paragraph 54 are legal conclusions to which no response is required. The allegations of Paragraph 54 also cite and quote the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

55.    The allegations of Paragraph 55 are legal conclusions to which no response is required. The allegations of Paragraph 55 also quote the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

56.    The allegations of Paragraph 56 are legal conclusions to which no response is required. The allegations of Paragraph 56 also cite and purport to quote the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its

content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

57.    The allegations of Paragraph 57 are legal conclusions to which no response is required. The allegations of Paragraph 57 also cite and quote the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

58.    The allegations of Paragraph 58 are legal conclusions to which no response is required. The allegations of Paragraph 58 also cite 49 C.F.R. § 194.103(c), which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

59.    The allegations of Paragraph 59 are legal conclusions to which no response is required. The allegations of Paragraph 59 also cite the Oil Pollution Act of 1990 and 49 C.F.R. § 194.121(b), which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statute and regulation, the allegations are denied.

60.    The allegations of Paragraph 60 are legal conclusions to which no response is required. The allegations of Paragraph 60 also cite and quote 49 C.F.R. § 194.121(b)(7), which speaks for itself and is the best evidence of its content.  To

the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

61.   Defendants admit the allegations of Paragraph 61.

62.   Defendants admit the allegations of Paragraph 62.

63.   Defendants admit the allegations of Paragraph 63.

64.   Defendants admit that Lake Michigan and Lake Huron are two of the five Great Lakes.  The remaining allegations of Paragraph 64 are legal conclusions to which no response is required. The allegations of Paragraph 64 also cite and quote 49 U.S.C. § 60109(b)(2), which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

65.   Defendants admit the allegations of Paragraph 65.

66.   Defendants admit the allegations of Paragraph 66.

67.   Defendants admit the allegations of Paragraph 67.

68.   Defendants admit the Line 6B oil pipeline discharged oil in Marshall, Michigan, in 2010.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 68, and on that basis deny them.

69.   Defendants lack knowledge of information sufficient to form a belief as to the truth of the allegations of Paragraph 69, and on that basis deny them.

70.     Defendants admit that the Straits of Mackinac and its shorelines support fish and wildlife, and provide opportunities for recreation and aesthetic enjoyment.

71.     Defendants admit the allegations in the first sentence of Paragraph 71. Defendants admit that the bi-directional flow in the Straits of Mackinac means that an oil pipeline spill or other contaminant release in the Straits of Mackinac could move into Lake Huron or Lake Michigan, or potentially into both. Defendants admit the allegations in the third sentence of Paragraph 71.

72.     Defendants admit the Great Lakes contain approximately one-fifth of the world's fresh water and supply drinking water to approximately forty million people.

73.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73, and on that basis deny them.

74.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 74, and on that basis deny them.

75.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 75, and on that basis deny them.

76.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 76, and on that basis deny them.

77.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77, and on that basis deny them.

78.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78, and on that basis deny them.

79.      Defendants admit the allegations of Paragraph 79.

80.      Defendants admit the allegations of Paragraph 80.

81.      Defendants admit the allegations of Paragraph 81.

82.      Defendants admit that the NMACP states: "It is estimated up to 19,164 bbls (269,976 gallons) could be released if the EFRD [Emergency Flow Restricting Device on the Line 5 pipeline] fails to close in normal time." Defendants admit that the NMACP then states "this [specific] scenario was ranked #1 overall during the 2013 NMAC Risk Assessment based on Severity, Probability, and Impact." Defendants deny all other allegations of Paragraph 82.

83.      Defendants admit that a discharge of oil from Line 5 may under certain circumstances harm the environment, property, or public health.

Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83, and on that basis deny them.

84.     Defendants admit the allegations of Paragraph 84.

85.     Defendants admit the allegations of Paragraph 85.

86.     The allegations of Paragraph 86 are legal conclusions to which no response is required.  The allegations of Paragraph 86 also quote and cite the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.

87.     Defendants admit the allegations of Paragraph 87.

88.     Defendants deny the allegations of Paragraph 88.

89.     Defendants admit that former USCG Commandant Adm. Paul Zukunft testified under oath before the United States Senate Commerce, Science, and Transportation Committee on April 28, 2015.  Defendants admit that during this session, Admiral Zukunft was questioned by Senator Gary Peters of Michigan, who asked Admiral Zukunft about pipelines and oil spill response plans in the Great Lakes, specifically the following questions: "How comfortable are you with the plans in the Great Lakes, particularly – not just with the Straits of Mackinac pipeline, but we have others" and "Do you have enough information regarding those pipelines that cross this pristine environment? And do you feel comfortable

that the partners that work with are in a position to respond as quickly as

necessary?"  Defendants admit that in response, Admiral Zukunft stated,

> "And until I have actually seen the plans, Senator, I would have to
> say no, I am not comfortable.  And the reason I say that is that
> information is then factored into what we call an area contingency plan,
> when you look at what a worst-case discharge might be and then what
> equipment do you have to have pre-staged to enable a response to a spill
> of that magnitude. And we found out, again, during Deepwater Horizon,
> that those area contingency plans were inadequate for a spill of that
> volume.  So I need to do a deeper read on that, and we owe you a
> response after we review that material, our area contingency plans, to say
> how ready we are for a major spill in the Great Lakes."

The Admiral's full and complete testimony speaks for itself and is the best

evidence of its content.

90.  Defendants respond to the allegations of Paragraph 90 by alleging and

incorporating their response provided above to Paragraph 4.

91.  Defendants deny the allegations in the first sentence of Paragraph 91.

Defendants lack knowledge or information sufficient to form a belief as to the truth

of the remaining allegations of Paragraph 91, and on that basis deny them.

92.  Defendants admit that a 2013 Coast Guard analysis contains the

excerpted statements that Coast Guard responders have "limited capability in

detection and recovery" for higher profile submerged oil spills and that "[e]xisting

systems are inadequate to meet Federal On Scene Coordinator (FOSC) current

needs for heavy and sunken oil detection and recovery."   Defendants deny the

remaining allegations of Paragraph 92 and state that the 2013 Coast Guard analysis – taken in its entirety – speaks for itself and is the best evidence of its content.

93.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 because they do not possess a recorded transcript of this alleged statement, and on that basis deny them.

94.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94, and on that basis deny them.

95.   Defendants admit high wave conditions can hamper or entirely stop spill response efforts.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 95 because they do not possess a recorded transcript of this alleged statement, and on that basis deny them.

96.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 96 because they do not possess a recorded transcript of this alleged statement, and on that basis deny them.  Defendants deny the remaining allegations of Paragraph 96.

97.   Defendants admit that icy conditions impact spill response efforts. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 97 because they do not possess a recorded transcript of this alleged statement, and on that basis deny them.

98.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 because they do not possess a recorded transcript of this alleged statement, and on that basis deny them.

99.   Defendants deny the allegations in the first sentence of Paragraph 99. Defendants admit the allegations in the second sentence of Paragraph 99, but to the extent this fact implicates any inconsistency with the statutes cited in the Complaint or establishes a violation of law, the allegations are denied.

100.   Defendants deny the allegations of Paragraph 100 and deny any violations of law.

101.    Defendants reallege their responses to Paragraphs 1-100 as if set forth herein.

102.   The allegations of Paragraph 102 state legal conclusions to which no response is required.  The allegations of Paragraph 102 also quote the Administrative Procedure Act, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

103.   The allegations of Paragraph 103 state legal conclusions to which no response is required.  The allegations of Paragraph 103 also quote the Administrative Procedure Act, which speaks for itself and is the best evidence of

its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied

104.    Defendants deny the allegations of Paragraph 104 and deny any violation of law.

105.    Defendants deny the allegations of Paragraph 105 and deny any violation of law.

106.   Defendants deny the allegations of Paragraph 106 and deny any violation of law.

107.    Defendants reallege their responses to Paragraphs 1-100 as if set forth herein.

108.    The allegations of Paragraph 108 state legal conclusions to which no response is required.  The allegations of Paragraph 108 also cite the Oil Pollution Act of 1990, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

109.    Defendants deny the allegations of Paragraph 109 and deny any violation of law.

110.    Defendants deny the allegations of Paragraph 105 and deny any violation of law.

**PRAYER FOR RELIEF**

The remaining paragraphs of the Complaint consist of ELPC's and NWF's request

for relief to which no response is required.  Defendants deny that ELPC or NWF is

entitled to the requested relief or any relief whatsoever.

**GENERAL DENIAL**

Defendants deny any allegations of the Complaint that are not expressly admitted

herein.

**DEFENSES**

The Complaint fails to state a claim upon which relief can be granted.

/

/

/

Respectfully submitted this 26th day of October 2018.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

*/s/ Alan D. Greenberg*
ALAN D. GREENBERG
Environmental Defense Section
U.S. Department of Justice
Environment & Natural Resources Division
999 18th St., Suite 370
Denver, Colorado  80202
Telephone: 303-844-1366
E-mail:  alan.greenberg@usdoj.gov
Colorado Bar. No. 14110

MATTHEW SCHNEIDER
United States Attorney

*s/Lynn M. Dodge*
LYNN M. DODGE (P38136)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-0205
lynn.dodge@usdoj.gov

Of Counsel:
Glenn N. Gray, LT
U.S. Coast Guard
Washington, DC 20593

## Certificate of Service

I hereby certify that, on October 26, 2018, a copy of this ANSWER was electronically transmitted using the CM/ECF System for filing and thereby served on the following counsel of record.

Margrethe Kearney
mkearney@elpc.org

David Coburn
dcoburn@steptoe.com

Joshua Runyan
jrunyan@steptoe.com

Phillip J.  DeRosier
pderosier@dickensonwright.com


   */s/ Alan D. Greenberg*
Alan D. Greenberg
Attorney for Defendants