# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ENVIRONMENTAL LAW & POLICY CENTER and NATIONAL WILDLIFE FEDERATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES COAST GUARD, REAR ADMIRAL JOANNA M. NUNAN, in her official capacity as the Ninth Coast Guard District Commander,<br><br>Defendants,<br><br>ENBRIDGE ENERGY, LIMITED PARTNERSHIP,<br><br>Defendant-Intervenor. | No. 1:18-cv-12626-TLL-PTM<br><br>Judge Thomas L. Ludington<br><br>Magistrate Judge P.T. Morris |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

**Statement of the Issue**:

Have Plaintiffs demonstrated the exceptional circumstances required to supplement the administrative record when the document they request that the Court consider post-dates the Coast Guard's decision under review by five months, and does not provide any necessary background information.

**Controlling or Most Appropriate Authority:**

A. *Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the FHWA*, 756 F.3d 447, 464-65 (6th Cir. 2014).

B. *Little Travers Lake Prop. Owners Ass'n v. Nat'l Park Serv.,* 883 F.3d 644, 657 (6th Cir. 2018);

C. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997).

D. *S. Forest Watch, Inc. v. Jewell,* 817 F.3d 965, 977 (6th Cir. 2016).

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1
STATUTORY BACKGROUND..........................................................................2
FACTUAL BACKGROUND ...............................................................................3
ARGUMENT ........................................................................................................4

   I.    Supplementation of the Record Requires a Showing by ELPC of Exceptional Circumstances to Overcome the Presumption that the Coast Guard Properly Designated the Record..........................................................4

   II.   The Court Should Not Supplement the Administrative Record with Admiral Zukunft's November 2017 Testimony Because ELPC Has Not Met Its Burden to Justify Supplementation ..................................................7

      A. The Court Should Deny the Motion to Supplement Because Admiral Zukunft's Testimony Post-Dates the Approval Decision ..............................7

      B. ELPC Fails to Demonstrate Any Exceptional Circumstances that Would Warrant Consideration of Documents Outside the Record............................8

CONCLUSION ..................................................................................................13

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ackerman v. U.S. Dep't of Agric.*,
  2018 WL 6727038 (E.D. Mich. Dec. 21, 2018)......................................................5

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993)................................................................................5, 6

*Camp v. Pitts,*
  411 U.S. 138 (1973) ................................................................................................5

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  2018 WL 7200718 (S.D. Ohio Sept. 7, 2018)................................................... 9, 12

*Charter Twp. Of Van Buren v. Adamkus*,
  1999 WL 701924 (6th Cir. August 30, 1999) .......................................................6, 7

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ................................................................................................4

*Comprehensive Cmty. Dev. Corp. v. Sebelius*,
  890 F. Supp. 2d 305 (S.D.N.Y. 2012)......................................................................6

*Envtl. Def. Fund, Inc. v. Costle*,
  657 F.2d 275 (D.C. Cir. 1981)..................................................................................5

*Harkness v. Sec'y of the Navy*,
  858 F. 3d 437 (6th Cir. 2017) ..................................................................... 7, 8, 12

*Hickey v. Chadick*,
  2009 WL 3064445 (S.D. Ohio Sept. 18, 2009).......................................................6

*Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the,*
  *FHWA*, 756 F.3d 447 (6th Cir. 2014)..................................................... ii, 4, 7, 8, 11

*Little Travers Lake Prop. Owners Ass'n v. Nat'l Park Serv.*,
  883 F.3d 644 (6th Cir. 2018) ......................................................................... ii, 6, 9

*Partners in Forestry Co-op v. U.S. Forest Serv.*,
  45 F. Supp. 3d 677 (W.D. Mich. 2014)...................................................................6

*Picard v. Am. Bd. of Family Med.*,
  2015 WL 6387320 (E.D. Mich. Oct. 22, 2015)............................................... 7, 12

*San Luis Obispo Mothers for Peace v. NRC*,
   751 F.2d 1287 (D.C. Cir. 1984)..................................................................................5
*Sierra Club v. Slater*,
   120 F.3d 623 (6th Cir. 1997) ................................................................... ii, 5, 8, 11
*S. Forest Watch, Inc. v. Jewell*,
   817 F.3d 965 (6th Cir. 2016) ........................................................................ ii, 5, 8
*United States v. Martin*,
   438 F.3d 621 (6th Cir. 2006) ..................................................................................6
*United States v. Akzo Coatings of Am., Inc.*,
   949 F.2d 1409 (6th Cir. 1991) ..............................................................................12

**FEDERAL STATUTES**

5 U.S.C. § 706 ...............................................................................................................3, 4
33 U.S.C. § 1321(d)(1) ........................................................................................................2
33 U.S.C. § 1321(d)(2) ........................................................................................................2
33 U.S.C. § 1321(j)(2) .........................................................................................................2
33 U.S.C. § 1321(j)(4) .........................................................................................................2
33 U.S.C. § 1321(j)(4)(A) ...................................................................................................2
33 U.S.C. § 1321(j)(4)(B) ...................................................................................................2
33 U.S.C. § 1321(j)(4)(C) ................................................................................................2, 3
The Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484 (1990) .............2

## INTRODUCTION

Plaintiffs Environmental Law and Policy Center and National Wildlife Federation (collectively "ELPC") seek judicial review of the Coast Guard's approval, on June 6, 2017, of the Northern Michigan Area Contingency Plan. Area contingency plans coordinate responses to be undertaken during a discharge of oil or a release of hazardous substances from a vessel, onshore facility, or offshore facility. The Northern Michigan Area Contingency Plan describes the strategy for a coordinated federal, state, tribal, and local response to a discharge of oil, or a release of hazardous substances, within the boundaries of the Coast Guard Sector Sault Sainte Marie's Coastal Zone, which includes the Straits of Mackinac.

ELPC moves to supplement the administrative record filed by the Coast Guard with the testimony of Admiral Zukunft at a Congressional hearing on November 16, 2017, *five months after* the Coast Guard approved the Northern Michigan Area Contingency Plan challenged by ELPC. ELPC falls far short of demonstrating the exceptional circumstances that would justify supplementation of the record. It cannot show that the Coast Guard deliberately or negligently excluded the document from the record, because the document did not exist at the time of the Coast Guard's approval decision. Nor can ELPC show that the Admiral's testimony is background information needed to determine whether the agency considered all of the relevant factors. Further, ELPC does not attempt to

1

meet its burden of making a "strong showing of bad faith" in order to justify supplementing the record. The Court should deny ELPC's motion to supplement.

## STATUTORY BACKGROUND

The Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484 (1990), enacted in the wake of the Exxon *Valdez* disaster, created a complex and interwoven set of requirements and responsibilities to ensure the prevention and cleanup of oil spills. Among other things, the statute required the publication of a National Contingency Plan to "provide for efficient, coordinated, and effective action to minimize damage from oil and hazardous substance discharges." 33 U.S.C. § 1321(d)(1), (2). The statute also created "Area Committees" for designated geographical areas and required them to prepare "Area Contingency Plans." 33 U.S.C. § 1321(j)(2), (4).

Area Committees consist of personnel from Federal, State, tribal, and local agencies. *Id.* § 1321(j)(4)(A). They are charged with developing Area Contingency Plans to respond to discharges of oil and releases of hazardous substances from vessels and facilities. *Id.* § 1321(j)(4)(B). An Area Contingency Plan must, when implemented with the National Contingency Plan, be adequate to remove a worst case discharge and to mitigate or prevent a substantial threat of such a discharge from a vessel, or onshore or offshore facility operating in the area. *Id.* § 1321(j)(4)(C)(i). The Plan must also describe the responsibilities of an owner

2

or operator and of Federal, State, and local agencies in removing a discharge, list available response equipment, and meet the other requirements of the statute. *Id.* § 1321(j)(4)(C).

## FACTUAL BACKGROUND

The Northern Michigan Area Contingency Plan describes the strategies for responding to releases and discharges within the Coast Guard Sector Sault Sainte Marie's Coastal Zone, which includes the Straits of Mackinac. *See* USCG_00000642. The current Plan was prepared by Coast Guard Sector Sault Sainte Marie personnel working with the Area Committee, nongovernmental organizations, and the private sector. USCG_00000627. The Plan was approved by the Commander of the Ninth Coast Guard District on June 6, 2017. USCG_00000618.

ELPC seeks judicial review of this approval under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* Complaint, ECF No. 1, ¶ 13.

The Coast Guard filed the administrative record on December 17, 2018. ECF No. 20. In accordance with the Scheduling Order, ECF No. 19, the parties engaged in informal discussions regarding the contents of the record.

ELPC requested that the Coast Guard add seven documents to the record. Four of the documents – three newspaper articles and a YouTube video – contained public statements by Coast Guard employees involved in the

3

development of the Northern Michigan Area Contingency Plan. The Coast Guard agreed to amend the record to add the four statements. The other three documents consisted of Congressional testimony that Admiral Zukunft provided to the Senate Subcommittee on Oceans, Atmosphere, Fisheries, and Coast Guard. Because the Coast Guard did not consider this Congressional testimony identified by ELPC in developing and approving the Northern Michigan Area Contingency Plan, the Coast Guard declined to add this Congressional testimony. ELPC challenges the Coast Guard's decision not to amend the record to include one of these documents: Admiral Zukunft's Congressional testimony on November 16, 2017.

## ARGUMENT

**I.    Supplementation of the Record Requires a Showing by ELPC of Exceptional Circumstances to Overcome the Presumption that the Coast Guard Properly Designated the Record.**

The APA directs that "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Although the APA does not define "whole record," the Supreme Court has directed lower courts to confine their review of agency decisions to "the full administrative record that was before the [agency] at the time [the agency] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the FHWA*, 756 F.3d 447, 464-65 (6th Cir. 2014) (court's review "is limited to the administrative record, which includes materials compiled by the agency at the time

its decision was made"). The "focal point for judicial review [of an agency decision] should be the administrative record already in existence, *not some new record made initially in the reviewing court*." *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (emphasis added); *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 977 (6th Cir. 2016).

Confining judicial review to an agency's stated rationale and findings "is central to a harmonious relationship between agency and court, one which recognizes that the agency and not the court is the principal decision-maker." *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1325-26 (D.C. Cir.1984). Limiting review to the administrative record ensures "that the reviewing court does not use other evidence to 'convert the 'arbitrary and capricious' standard into effectively *de novo* review.'" *Ackerman v. U.S. Dep't of Agric.*, 2018 WL 6727038 at *6 (E.D. Mich. Dec. 21, 2018) (attached as Exhibit 1); *see Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (extra-record evidence generally may not be used to challenge the wisdom or soundness of the decision).

The record includes all materials compiled by the agency that were before the agency "at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). The record consists of the documents directly or indirectly considered, *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993), and the materials actually before the agency decision-maker are the

5

touchstone for this inquiry. *See Hickey v. Chadick*, 2009 WL 3064445, at *2 (S.D. Ohio Sept. 18, 2009) (attached as Exhibit 2) (to justify supplementation "[i]t is not enough that the documents were known by the DLA generally, plaintiff must show the documents were known by the DLA decision maker in particular"); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (same).

"The designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Bar MK Ranches*, 994 F.2d at 740; *Partners in Forestry Co-op v. U.S. Forest Serv.,* 45 F. Supp. 3d 677, 682 (W.D. Mich. 2014). The court "assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Bar MK Ranches*, 994 F.2d at 740; *see United States v. Martin*, 438 F.3d 621, 634 (6th Cir. 2006) (agency action is entitled to a presumption of regularity that may be overcome only by "clear evidence").

Supplementation of the administrative record is "rare and requires 'exceptional circumstances'" *Little Travers Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 657 (6th Cir. 2018); *Charter Twp. of Van Buren v. Adamkus*, 1999 WL 701924, at *4 (6th Cir. August 30, 1999) (attached to ELPC's Brief as Exhibit B). Evidence outside the administrative record is allowed only "when an agency deliberately or negligently excluded certain documents" from the record or

"when the court needs certain 'background' information in order to determine whether the agency has considered the relevant factors." *Latin Ams. for Soc. & Econ. Dev.*, 756 F.3d at 465; *Picard v. Am. Bd. of Family Med.*, 2015 WL 6387320 at *6 (E.D. Mich. Oct. 22, 2015) (attached as Exhibit 3). In either case, the burden is on the plaintiff to make a "strong showing of bad faith" in order to justify supplementing the record. *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 451 (6th Cir. 2017); *Picard*, 2015 WL 6387320 at *6. Showing bad faith requires plaintiffs to establish "specific facts indicating that the challenged action was reached because of improper motives." *Charter Twp. of Van Buren*, 1999 WL 701924 at *4.

## II. The Court Should Not Supplement the Administrative Record with Admiral Zukunft's November 2017 Testimony Because ELPC Has Not Met Its Burden to Justify Supplementation.

### A. The Court Should Deny the Motion to Supplement Because Admiral Zukunft's Testimony Post-Dates the Approval Decision.

The Coast Guard approved the Northern Michigan Area Contingency Plan on June 6, 2017. Admiral Zukunft's Congressional testimony that ELPC asks the Court to consider occurred on November 16, 2017. The fact that the testimony post-dates the decision is sufficient grounds to deny the motion to supplement.

This Court's review "is limited to the administrative record, which includes materials compiled by the agency *at the time its decision was made*." *Latin Ams.*

7

*for Soc. & Econ. Dev.*, 756 F.3d at 464-65 (emphasis added); *See Slater*, 120 F.3d at 638 (record includes the materials before the agency at the time the decision was made). ELPC acknowledges that the testimony it seeks the Court to consider took place five months after the Coast Guard approved the plan. Brief in Support of Plaintiffs' Motion to Supplement, ECF No. 24 ("ELPC Br.") at 1. Because documents that arise after the agency action cannot have been considered at the time of the decision, supplementation is improper. *See S. Forest Watch*, 817 F.3d at 978. The Court should deny ELPC's effort to create a new record in the reviewing court.

### B. ELPC Fails to Demonstrate Any Exceptional Circumstances that Would Warrant Consideration of Documents Outside the Record.

ELPC has not shown that the Coast Guard deliberately or negligently excluded Admiral Zukunft's November 2017 Congressional testimony or that the testimony is needed as background information in order to determine whether the Coast Guard considered the relevant factors. *See Latin Ams. for Soc. & Econ. Dev.*, 756 F.3d at 465. Nor did ELPC make an attempt to make a "strong showing of bad faith." *Harkness*, 858 F. 3d at 451.

The Coast Guard did not deliberately or negligently exclude Admiral Zukunft's November 2017 testimony. Because the testimony post-dated the Coast Guard's approval, it was not before the Coast Guard at the time of decision and

8

could not have been negligently or deliberately excluded. *See Little Traverse Lake Prop. Home Owners Ass'n.*, 883 F.3d at 658 ("It would be strange to say that the Park Service deliberately excluded certain documents that were never presented to it for consideration"); *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 2018 WL 7200718 at *7-*8 (S.D. Ohio Sept. 7, 2018) (attached as Exhibit 4) (deliberate or negligent exclusion requires concrete evidence that specific documents missing from the record were directly or indirectly considered by the decision makers involved in the challenged agency action).

Admiral Zukunft's November 2017 testimony does not provide needed background information for the Northern Michigan Area Contingency Plan. ELPC incorrectly asserts that Admiral Zukunft's November 2017 testimony contains the outcome of a discussion with Senator Peters in April 2015 that addressed the area contingency plans in the Great Lakes. ELPC Br. at 5. In April 2015, Senator Peters and Admiral Zukunft discussed area contingency plans and their adequacy to respond to a major spill.[1] ELPC Br. at 2-3. Admiral Zukunft said he would provide an additional response after reviewing the area contingency plan. *Id.* at 3. After the testimony in April 2015, the Coast Guard approved a revised Northern Michigan Area Contingency Plan in June 2017 based on the determination by

---

[1] Admiral Zukunft's April 2015 Congressional testimony is included in the administrative record. USCG_00000233-89.

9

Sector Sault Sainte Marie and the Commander of the Ninth Coast Guard District that the Plan met statutory and regulatory requirements, including the ability to respond to a worst case discharge.

Admiral Zukunft's November 2017 testimony is not background information relating to the April 2015 testimony. In November 2017, neither Senator Peters' question nor Admiral Zukunft's response mention the April 2015 testimony or area contingency plans. ELPC Br. at 3-5. Senator Peters expressly states that the discussion in November 2017 is a follow-up to a discussion in March 2017 regarding concerns and research associated with cleaning up spills in fresh water; Senator Peters requested an update on research and resource needs. ELPC Br. at 3-4. Admiral Zukunft responded by acknowledging the need to make investments in research and development, and specifically described additional research to address "two anomalies" when it comes to oil spill recovery: oil in an iced environment and tar sands that sink. ELPC Br. at 4. His opinion that the Coast Guard is not "Semper Paratus for a major pipeline oil spill in the Greater [sic] Lakes" was made in the context that "more science needs to be done" to address the "anomalies" associated with oil spill recovery. ELPC Br. at 5. Because the testimony did not address the Northern Michigan Area Contingency Plan previously approved, Admiral Zukunft's testimony does not provide needed background information.

Nor is Admiral Zukunft's testimony required to assess whether the Coast Guard considered relevant factors. The Coast Guard's administrative record addresses issues of recovery of oil in iced environments. *See, e.g.*, USCG_00000041-130 (Great Lakes Demonstration 2 Final Report); USCG_0000131-229 (Great Lakes Oil-in-Ice Demonstration 3 Final Report). On the other hand, tar sands are not a relevant factor to the Area Contingency Plan. Enbridge Energy, Limited Partnership does not transport heavy oil through its Line 5 pipeline across the Straits of Mackinac and has agreed that it will not do so in the current engineering configuration and under current operating parameters, except as provided in its agreement with the State of Michigan. *See* Agreement between the State of Michigan and Enbridge Energy, Limited Partnership Regarding the Transportation of Heavy Crude Oil Through the Straits of Mackinac Pipelines, September 3, 2015, ¶ 1, attached as Exhibit 5. Thus, ELPC cannot show that the current record is inadequate to assess its claims. *See Latin Ams. for Soc. & Econ. Dev.*, 756 F.3d at 465, 475 (affirming denial of motion to supplement where plaintiffs failed to demonstrate that without the documents the record is inadequate to assess the claims); *Slater*, 120 F.3d at 639 (same)

ELPC does not even attempt to make a "strong showing of bad faith." Instead, ELPC argues that this showing is not required. ELPC Br. at 6-7. Although the Sixth Circuit's case law is not wholly consistent, the Sixth Circuit

11

and this Court have recently affirmed that the burden is on plaintiff to make a strong showing of bad faith. *Harkness*, 858 F. 3d at 451; *Picard*, 2015 WL 6387320 at *6; *Cf.* ELPC Br. at 6-7 (citing cases). ELPC has not done so.

ELPC misplaces reliance on *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991), as authority supporting supplementing the record with Admiral Zukunft's testimony. *See* ELPC Br. at 6. *Akzo* arose from a motion to enter a consent decree under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and an associated review of the adequacy of the selected response action. *Akzo*, 949 F.2d at 1422-23. The Sixth Circuit noted that the specific "circumstances of this case" justified consideration of a comment letter submitted by the State of Michigan that was not part of the administrative record. *Id.* at 1427. Those specific circumstances included the CERCLA requirement that the State be given a reasonable opportunity to review and comment on the consent decree. *Id.* The specific circumstances also included the CERCLA requirement that the consent decree be subject to public comment prior to entry of the consent decree as a final judgment. *Id.* at 1427. The unique circumstances justifying supplementation of the record in *Akzo* do not exist in the typical request for supplementation of the record under the APA, such as presented here. *See Ctr. for Biological Diversity*, 2018 WL 7200718 at *12.

## CONCLUSION

For the reasons set forth above, the Court should deny ELPC's motion to supplement the administrative record.

>*/s/ Alan D. Greenberg*
>ALAN D. GREENBERG
>Environmental Defense Section
>U.S. Department of Justice
>Environment & Natural Resources Division
>999 18th St., Suite 370
>Denver, Colorado 80202
>Telephone: 303-844-1366
>E-mail: alan.greenberg@usdoj.gov
>Colorado Bar. No. 14110
>
>*Counsel for Federal Defendants U.S. Coast Guard and Rear Admiral Joanna N. Nunan*

March 1, 2019

## Certificate of Service
## and Local Rule Certification

I hereby certify that, on March 1, 2019, a copy of the foregoing DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD was electronically transmitted to the Court using the CM/ECF System and will be served by electronic mail on the following counsel of record.

| | |
|---|---|
| Margrethe Kearney<br>mkearney@elpc.org | David Coburn<br>dcoburn@steptoe.com |
| Joshua Runyan<br>jrunyan@steptoe.com | Phillip J. DeRosier<br>pderosier@dickensonwright.com |

**LOCAL RULE CERTIFICATION**: I, Alan D. Greenberg, certify that this Memorandum complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 14 point (for proportional fonts).

    */s/ Alan D. Greenberg*
Alan D. Greenberg
Attorney for Defendants