## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ENVIRONMENTAL LAW & POLICY )
CENTER and NATIONAL WILDLIFE )
FEDERATION )
  )
          Plaintiffs, )
   v. )
  )   No. 1:18-cv-12626-TLL-PTM
UNITED STATES COAST GUARD and )
REAR ADMIRAL JOANNA M. NUNAN, )   Judge Thomas L. Ludington
in her official capacity as the Ninth )
Coast Guard District Commander )   Magistrate Judge P. T. Morris
  )
          Defendants, )
  )
ENBRIDGE ENERGY, LIMITED )
PARTNERSHIP )
  )
          Defendant-Intervenor. )

---

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF
## MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

---

## <u>TABLE OF CONTENTS</u>

Index of Authorities ……………………………………………………………iii

Introduction  ………………………………………………………………………1

I. Regardless Of The Context In Which It Was Given, Coast Guard Admiral Zukunft's Testimony Directly Contradicts the Agency's Approval of the NMACP and Must Be Included in the Record in this Case…………………………………. 2

II. The Record Filed By The Coast Guard Fails to Reflect The Consideration of Worst Case Discharges During the Approval Process of the NMACP……………5

A. Admiral Zukunft's Testimony Is Properly Considered in The Plaintiffs' Challenge to The Approved, And Currently Effective, NMACP…………………..7

Conclusion ……………………………………………………………………………8

# INDEX OF AUTHORITIES

*California v. United States Dept. of Interior*, No. 4:17-cv-5948-SBA (N.D. Cal. Mar 29, 2019)……………………………………………………….……...3

*Cissell Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132 (6th Cir. 1996)…………..7

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983) ……..………………………………………....…3

*Sw. Elec. Power Co. v. United States Envtl. Prot. Agency*, 920 F.3d 999 (5th Cir. 2019)…………………………………………………………………………. 3

*United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991)……...4

33 U.S.C. § 1321(j)(4)(C)(i) ………………………………………….………3

# **INTRODUCTION**

The question before this Court is whether it can consider sworn testimony from the Coast Guard's highest ranking official that plainly contradicts official agency action taken only five months prior.  Regardless of the context in which it was made, the sworn testimony of Admiral Zukunft that the Coast Guard is not *semper paratus* to respond to an oil spill in the Great Lakes constitutes an admission by the agency that its decision to approve the Northern Michigan Area Contingency Plan (NMACP) was arbitrary and capricious.

The Coast Guard's certification that the NMCAP is sufficient to respond to a worst case discharge—an oil spill from Enbridge's Line 5 pipeline in the Straits of Mackinac—was arbitrary and capricious because, only five months later, the highest ranking member of the Coast Guard stated in sworn testimony before Congress that the Coast Guard is actually ***not prepared*** to respond to an oil spill in the Great Lakes.  As Plaintiffs' Motion explained, Admiral Zukunft's testimony was part of a multi-year dialogue between the Coast Guard's senior ranking officials and United States Senator Gary Peters (Michigan), who consistently voiced concerns about the Coast Guard's ability to respond to an oil spill from the Line 5 pipeline in the Straits of Mackinac which join Lake Huron and Lake Michigan.  The Defendant Coast Guard is now trying to keep its own contradictory statement out of the record, but the Court cannot reasonably, and should not,

1

decide this case if that highly relevant and necessary admission against interest is omitted.

The Court's April 11, 2019, Order directing Supplemental Briefing seeks additional background information to corroborate Plaintiffs' contentions that: (1) Admiral Zukunft or the Coast Guard did conduct his promised "deeper read" of the applicable Area Contingency Plans, but that "deeper read" was not considered in conjunction with the preparation of the NMACP approved in July 2017, and (2) Admiral Zukunft's November 2017 testimony was an official rejection of the approved NMACP. Plaintiffs appreciate the opportunity for supplemental briefing to explain why the information presented in prior filings and in this supplemental brief support the inclusion of Admiral Zukunft's November 2017 testimony in the administrative record.

## I.   Regardless Of The Context In Which It Was Given, Coast Guard Admiral Zukunft's Testimony Directly Contradicts the Agency's Approval of The NMACP and Must Be Included in the Record in this Case.

Admiral Zukunft's testimony need not be an "official rejection" of the NMACP to be reasonably and properly included in the record in this case. Regardless of whether Admiral Zukunft's statement was intended to be an "official rejection" of the NMACP specifically, his statement, by definition, establishes that the Defendant's prior decision is the definition of arbitrary and capricious, and is contrary to the law and relevant facts.  By law, the NMACP "shall be adequate to

2

remove a worst case discharge." 33 U.S.C. § 1321(j)(4)(C)(i). The worst case discharge in the NMACP is an oil spill from the Line 5 pipeline into the Great Lakes. The final agency action approving the NMACP is therefore an agency determination that the plan presented by the Coast Guard is adequate to remove an oil spill from the Line 5 pipeline into the Great Lakes. Admiral Zukunft's testimony directly contradicts this.

While agency inconsistency is not *per se* arbitrary and capricious, a sudden and unexplained change is. *See Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 46–57 (1983) (National Highway Traffic Safety Administration rescission of passive restraint requirement was arbitrary and capricious because agency failed to present an adequate basis and explanation for change); *see also Sw. Elec. Power Co. v. United States Envtl. Prot. Agency*, 920 F.3d 999, 1016 - 1018 (5th Cir. 2019) (The EPA's inconsistencies and unexplained assertions cast grave doubt on its decision, which was accordingly arbitrary and capricious); *California v. United States Dept. of Interior*, No. 4:17-cv-5948-SBA at 14 - 17 (N.D. Cal. Mar 29, 2019) (ONRR conclusory justifications failed to pass muster, in that they failed to explain the inconsistencies in ONRR's prior findings when enacting the Valuation Rule and its decision to repeal the rule). Accordingly, when determining if an agency decision

was arbitrary and capricious, the Court must consider information that directly contradicts the logic behind that agency decision.

When asked in April 2015 whether the Coast Guard could respond to an oil spill in the Great Lakes, Admiral Zukunft could not answer, and he cited a need to develop and review Area Contingency Plans affecting the Great Lakes. The record filed in this case reflects that the Coast Guard subsequently embarked upon a process of renewing and developing Area Contingency Plans to incorporate lessons learned from national incidents, but contains no evidence that the Coast Guard actually applied those lessons learned to the NMACP. In fact, when later questioned about the Coast Guard's ability to respond to an oil spill in the Great Lakes, Admiral Zukunft, who was then the Defendant Coast Guard's ranking officer and agency leader, replied that the Coast Guard was not prepared to do so.

If the Coast Guard contends that it did not consider Admiral Zukunft's conclusions regarding the Coast Guard's preparedness to respond to an oil spill in the Great Lakes, that actually emphasizes and highlights the arbitrary and capricious nature of the Coast Guard's approval of the NMACP. Therefore, the Court should appropriately consider these documents "as either background information to aid the court's understanding, or to determine if the agency examined all relevant factors or adequately explained its decision." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991).

4

II.     **The Record Filed By The Coast Guard Fails to Reflect The Consideration of Worst Case Discharges During the Approval Process of the NMACP.**

Including Admiral Zukunft's testimony would not reopen a certified plan based on later research or factual events.  Rather, the inclusion of the testimony is a continuation of unanswered questions about the NMACP already in the record. The documents contained in the record indicate that the "deeper read" promised by Admiral Zukunft was taking place at the highest levels of the Coast Guard, but there is no indication that this deeper read was considered by the relatively lower officials of Defendant Coast Guard during the preparation of the NMACP.

In 2016, the Defendant Coast Guard undertook an overall "effort to renew coastal zone area contingency plans (ACPs) across the Great Lakes region." USCG_00000402.  The Coast Guard noted that it had learned many lessons over the past decade from national incidents, and that "this is the first concerted, standardized effort in recent times to institutionalize within Great Lakes ACPs what we have collectively learned about preparedness for response to oil spills." USCG_00000402.  The explanation for this undertaking echoes Admiral Zukunft's recognition in his April 2015 testimony that the Coast Guard "found out, again, during Deepwater Horizon, that those area contingency plans were inadequate for a spill of that volume." USCG_00000255.     The record references "ACP revitalization" efforts that are the result of "high-level direction" to put area

5

contingency plans in alignment with federal law and "HQ policy." USCG_00000582.

The record does not contain the explanatory memo that provides a summary of this "high level direction."  Nor does the record explain how the NMACP took into account the lessons learned from national incidents to evaluate whether the NMACP was adequate to address a spill of the volume of oil that would be released from Line 5.  At best, the record shows highlighted sections of the prior NMACP that needed to be confirmed or revised. [USCG_00000435 - 00000547]. Nowhere does the record demonstrate that the Coast Guard truly considered the lessons learned from national incidents.   Admiral Zukunft's November 2017 testimony, on the other hand, gives insight into the lessons learned and reveals that more should have been done in developing a plan for a worst case discharge in the Great Lakes.

Admiral Zukunft's November 2017 testimony specifically references work being done in New Jersey, and other more local work being done to evaluate Area Contingency Plans in the Great Lakes.  While such work was clearly taking place, the filed record does not include any indication that the Coast Guard considered this research and development in drafting and approving the NMACP.  Admiral Zukunft's 2017 testimony demonstrates that while the most senior representatives of the Coast Guard recognized the agency's inability to respond to an oil spill in

the Great Lakes, the Defendant agency failed to consider that reality when developing and approving the NMACP.

### A. Admiral Zukunft's Testimony Is Properly Considered in The Plaintiffs' Challenge to <u>The Approved, And Currently Effective, NMACP.</u>

Because the Coast Guard's approval of the currently applicable NMACP was arbitrary and capricious, and contrary to law, the existing NMACP cannot stand. While the NMACP is a "living document" and can be updated, the plan is only subjected to a comprehensive review every four years. USCG_00000630. This means that the next comprehensive update of the plan will not take place until June 2021. There have been three recorded changes to the NMACP, the most recent being on January 17, 2018. USCG_00000619. Each of these changes is ministerial and fundamentally distinct from the type of in-depth review required to determine whether the Coast Guard—which admittedly is not prepared to respond to an oil spill in the Great Lakes—can legally approve a plan for responding to a spill of over 100,000 barrels of oil from Enbridge's Line 5 pipeline in the Straits of Mackinac.

While there is legal authority for reopening a certified plan based on later research or factual events, that is not the question at issue here. *Cissell Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132, 1137 (6th Cir. 1996) (no principle of administrative law restricts an agency from reopening proceedings to take new

evidence after the grounds upon which it relied are determined by a reviewing court to be invalid).  Admiral Zukunft's testimony that the Coast Guard is not prepared to respond to an oil spill in the Great Lakes is not based on the result of a subsequent study or a change in factual circumstances; instead, it explains the Defendant agency's best understanding of its <u>limited</u> ability to respond to a spill from the Line 5 oil pipeline at about the very time the NMACP was approved.  If the Court concludes that the Defendant agency's senior official's testimony given five months later should be excluded because of the date, it must allow Plaintiffs a reasonable opportunity to depose Admiral Zukunft to determine if he held that belief at the time the NMACP was approved.

## **CONCLUSION**

The record suggests that the highest echelon of the Defendant Coast Guard was considering how Area Contingency Plans should be modified to address concerns raised by Admiral Zukunft in his April 2015 testimony.  The record does not suggest that the Coast Guard actually considered these concerns in its review and approval of the NMACP in July of 2017.  Regardless of what the record reflects about Admiral Zukunft's concerns, however, the fact remains that the Defendant Coast Guard's approval of the NMACP was flatly contradicted by the Admiral's testimony just five months later.  This inconsistency need not be an official rejection, or carry with it detailed evidence of the Admiral's deeper dive

into Area Contingency Plans.  It is arbitrary and capricious for the Coast Guard to certify that the NMACP is sufficient to respond to an oil spill in the Great Lakes, but then for the head of the Coast Guard to testify under oath five months later that the Coast Guard is not prepared to respond to an oil spill in the Great Lakes.  The current NMACP will not be reconsidered until 2021, and this Court should not wait to determine that the Coast Guard's approval of the plan was arbitrary and capricious.  Accordingly, the Court should grant Plaintiffs ELPC and NWF's Motion to Supplement the Administrative Record and consider the November 2017 testimony.

Dated: May 1, 2019                              Respectfully submitted,

                                                 /s/ Margrethe Kearney_____

Howard A. Learner                               Margrethe Kearney (P80402)
Environmental Law & Policy Center               Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600                1514 Wealthy St. SE
Chicago, Illinois 60601                         Grand Rapids, Michigan 49506
(312) 673-6500                                  (773) 726-8701
hlearner@elpc.org                               mkearney@elpc.org

                                                *Attorneys for Plaintiffs*
                                                *Environmental Law & Policy Center*
                                                *and National Wildlife Federation*

## CERTIFICATE OF SERVICE
## AND LOCAL RULE CERTIFICATION

I hereby certify that on May 1, 2019, a copy of the foregoing document was electronically filed via the CM/ECF system and will be served by electronic mail on the following counsel of record:

Alan D. Greenberg
Environmental Defense Section
U.S. Department of Justice
999 18th St., Suite 370
Denver, Colorado 80202
(303) 844-1366
alan.greenberg@usdoj.gov

Lynn Marie Dodge
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226
313-226-9100
lynn.dodge@usdoj.gov

*Attorneys for Federal Defendants*

David H. Coburn
Joshua H. Runyan
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036
Phone: (202) 429-3000
dcoburn@steptoe.com
jrunyan@steptoe.com

Phillip J. Derosier
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226-3425
Phone: (313) 223-3866
PDeRosier@dickinsonwright.com

*Attorneys for Intervenor-Defendant Enbridge Energy, Limited Partnership*

**LOCAL RULE CERTIFICATION:** I, Margrethe Kearney, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 14 point (for proportional fonts).

/s/ Margrethe Kearney_____
Margrethe Kearney