UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ENVIRONMENTAL LAW & POLICY
CENTER, and NATIONAL WILDLIFE
FEDERATION
    Plaintiffs,

v.

UNITES STATES COAST GUARD,
and REAR ADMIRAL JOANNA M.
NUNAN in her official capacity as
Coast Guard District Commander,

    Defendants.
_____/

Case No. 18-cv-12626

Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

## ORDER DENYING PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

On August 22, 2018, Plaintiffs Environmental Law & Policy Center (ELPC), and National Wildlife Federation (NWF) filed a complaint against Defendants United States Coast Guard and Rear Admiral Joanna M. Nunan in her official capacity as Coast Guard District Commander. Compl., ECF No. 1. Plaintiffs allege that the Coast Guard's Northern Michigan Area Contingency Plan (NMACP), certified by the Ninth Coast Guard District Commander, Rear Admiral June E. Ryan, on June 6, 2017, is inadequate to respond to a worst-case discharge, and that Defendants wrongfully approved the NMACP in violation of the Administrative Procedure Act (Count I) and the Oil Pollution Act of 1990 (OPA) (Count II). *Id.* ¶ 101–110.

On October 15, 2018, Enbridge, an owner of two oil pipelines known as "Line 5" and the primary risk addressed by the NMACP, moved to intervene as a defendant. ECF No. 12. As the

owner and operator of Line 5, Enbridge was entitled to intervention as of right. *See* Fed. R. Civ. P. 24(a)(2). The motion was unopposed and was granted on November 1, 2018. ECF No. 17. The administrative record was filed on December 17, 2018. ECF No. 20.

On February 15, 2019, Plaintiffs moved to supplement the administrative record to add Coast Guard Commandant Adm. Paul Zukunft's testimony before the U.S. Senate Subcommittee on Oceans, Atmosphere, Fisheries, and Coast Guard on November 16, 2017, some five months after Rear Admiral Ryan's certification of the NMACP. ECF No. 24. A statement by Admiral Zukunft made before the committee in April of 2015 is included in the administrative record. Defendant responded to Plaintiffs' motion on March 1, 2019. ECF No. 25.

On April 11, 2019, the Court entered a 22-page order summarizing the following: 1) the Oil Pollution Act's history, purpose, and interpretation; 2) the required content of Area Contingency Plans generally; 3) the specific Northern Michigan Area Contingency Plan applicable here and the Coast Guard's approval thereof; 4) the November 2017 senate testimony Plaintiff seeks to add to the administrative record in which Admiral Zukunft testified that the Coast Guard was not "semper paratus" for a major pipeline spill in the great lakes; and 5) the previous senate testimony from two years earlier to which the November 2017 testimony allegedly relates. A full factual and procedural summary can be found in that order. ECF No 27.

The Court directed the parties to submit supplemental briefing addressing the context of Adm. Zukunft's November 2017 testimony as well as the NMACP update schedule. The specific questions posed by the Court are set forth below. Plaintiffs filed their supplemental brief on May 1, 2019, and Defendants filed their supplemental brief on May 15, 2019. ECF Nos. 28, 30.

# I.

In their initial motion, Plaintiffs provided little more than four pages of analysis and asserted, with no factual support, that Admiral Zukunft's November 2017 testimony was a follow up to the deeper read he promised two years earlier. As explained in the Court's previous order, however:

> [T]he November 2017 hearing testimony was not focused on the June 2017 NMACP. The testimony involved several senators and several witnesses discussing a variety of challenges the Coast Guard faces across the country in responding to natural disasters including hurricanes. Senator Peter's questioning of Adm. Zukunft was specifically directed at the Great Lakes, but even that testimony covered a variety of different topics, many of which were unrelated to the Coast Guard's readiness to respond to oil spills. Moreover, even during the limited discussion of the Enbridge Energy Oil Pipeline under the Straights of Mackinac, neither Adm. Zukunft nor Senator Peter's specifically made any reference to the June 2017 NMACP. Nor did they reference Senator Peter's prior discussion with Adm. Zukunft in April 2015 in which Adm. Zukunft promised Senator Peters a "deeper read" on that issue.
> Even if Plaintiff is correct, and the Nov. 2017 testimony was a follow up to the "deeper read" Adm. Zukunft promised earlier, there is insufficient context from the Nov. 2017 testimony alone from which to derive any reasoned conclusion. Although a "deeper read" was contemplated, there was no subsequent explanation by Adm. Zukunft about what additional research was done, if any. There was also no explanation of whether Adm. Zukunft's testimony was meant as a substantive criticism of the certified plan itself (the NMACP) as opposed to the Coast Guard's general readiness to respond to spills in the Great Lakes. Again, he did not specifically reference the plan nor is it apparent that he was familiar with the plan.

Order at 19-20.

In their supplemental brief, Plaintiffs were given an opportunity to provide additional factual information to corroborate their contention that:

- Admiral Zukunft or the Coast Guard did in fact do a "deeper read" after the Admiral's April 2015 testimony that was not considered in conjunction with the preparation of the NMACP approved in June of 2017.

- Admiral Zukunft's November 2017 testimony was the Coast Guard's official rejection of the NMACP approved some four months earlier by the Coast Guard.

Plaintiffs furnish little new information in their supplemental briefing.[1] Rather, Plaintiffs dispute the relevance of the two questions posed above and reassert many of the same arguments they raised in their initial papers. Plaintiffs argue that "regardless of the context in which it was given, Coast Guard Admiral Zukunft's testimony directly contradicts the Agency's approval of the NMACP and <u>must be included in the record in this case</u>." Pl. Supp. Br. at 2 (emphasis in original). Respectfully, the Court disagrees. The context of the Admiral's testimony is important to understanding his intended communication and, as previously explained, the context surrounding Adm. Zukunft's November 2017 testimony strongly suggests that he did not intend it to be a follow up to his April 2015 testimony nor was it directed at the NMACP.

The only additional factual information identified by Plaintiffs is as follows:

> In 2016, the Defendant Coast Guard undertook an overall "effort to renew coastal zone area contingency plans (ACPs) across the Great Lakes region." USCG_00000402. The Coast Guard noted that it had learned many lessons over the past decade from national incidents, and that "this is the first concerted, standardized effort in recent times to institutionalize within Great Lakes ACPs what we have collectively learned about preparedness for response to oil spills." USCG_00000402. The explanation for this undertaking echoes Admiral Zukunft's recognition in his April 2015 testimony that the Coast Guard "found out, again, during Deepwater Horizon, that those area contingency plans were inadequate for a spill of that volume." USCG_00000255. The record references "ACP revitalization" efforts that are the result of "high-level direction" to put area contingency plans in alignment with federal law and "HQ policy." USCG_00000582. The record does not contain the explanatory memo that provides a summary of this "high level direction." Nor does the record explain how the NMACP took into account the lessons learned from national incidents to evaluate whether the NMACP was adequate to address a spill of the volume of oil

---

[1] Indeed, Plaintiffs assert that the answer to the second question is irrelevant, and that the answer to the first question is no: "Admiral Zukunft's testimony need not be an 'official rejection' of the NMACP to be reasonably and properly included in the record in this case . . . Admiral Zukunft's testimony that the Coast Guard is not prepared to respond to an oil spill in the Great Lakes is not based on the result of a subsequent study or a change in factual circumstances . . ." Supp. Br. at 2, 8.

that would be released from Line 5. At best, the record shows highlighted sections of the prior NMACP that needed to be confirmed or revised. [USCG_00000435 - 00000547]. Nowhere does the record demonstrate that the Coast Guard truly considered the lessons learned from national incidents. Admiral Zukunft's November 2017 testimony, on the other hand, gives insight into the lessons learned and reveals that more should have been done in developing a plan for a worst case discharge in the Great Lakes.

It is entirely unclear what the focus or objective of this additional discussion is, other than to suggest that in 2016 the Coast Guard began a focused effort to integrate lessons learned from spills in other parts of the nation in developing the ACPs for the Great Lakes. The task at hand here is not to evaluate "coastal ACPs" across the Great Lakes region generally, or to evaluate the Coast Guard's 2016 efforts to revitalize those coastal ACPs. The task at hand, as framed by Plaintiffs' complaint, is to evaluate the June 2017 NMACP. Adm. Zukunft's November 2017 testimony post-dates the Coast Guard's approval of the June 2017 NMACP by five months. There is no demonstrated reason to believe that Adm. Zukunft's testimony was directed at the NMACP. Finally, there is no reason to believe that the opinion Adm. Zukunft expressed in November 2017 was based on any subsequent research on Great Lakes Area Contingency Plans. Nor is there any reason to believe that, if such additional research took place, that the Coast Guard failed to consider it in conjunction with their approval of the June 2017 NMACP.

## II.

The Court also ordered the parties to brief the following questions:

- Has the Coast Guard established an updated cycle?

- If so, when is the next scheduled update?

- Is there legal authority to reopen a certified plan based on later research or factual events?

- Would the November 2017 Senate testimony of Adm. Zukunft potentially be subject to consideration in conjunction with the next update to the NMACP?

Defendants noted that ACPs are reviewed annually to determine if any changes are necessary. *See* Def. Supp. Br. Ex. B at 4-12 (Excerpts from Coast Guard's Marine Environmental Response and Preparedness Manual). Defendants also note that the Coast Guard last updated the NMACP on January 17, 2018. Additionally, the Coast Guard conducts a national review of ACPs every five years and the next scheduled review should be completed in 2021. Defendants noted that, although there is no applicable law or regulation requiring the re-opening of ACP approval proceedings based on new information, the Coast Guard has the inherent authority to do so. The Coast Guard has expressed its intention to consider Adm. Zukunft's testimony when preparing its next annual review.

Plaintiffs devoted little attention to addressing these issues, largely arguing that the update schedule is irrelevant. In light of the fact that the NMACP is subject to periodic updates, Defendants argue that supplementation of the record with documents that post-date the approval decision and that will be considered as a regular part of the update process is not justified. The Court is inclined to agree. The OPA (33 U.S.C. § 1321(j)(4)(C)(ix) itself requires periodic updates, and the Coast Guard has established an update schedule. The fact that Plaintiffs have not identified any meritorious basis for the consideration of a document that post-dates the approval decision in question is a sufficient reason to deny Plaintiffs' motion. The fact that the November 2017 testimony is potentially subject to consideration in conjunction with a statutorily mandated update to the NMACP further bolsters that conclusion.

**III.**

Accordingly, it is **ORDERED** that Plaintiffs' motion to supplement the administrative record, ECF No. 24, is **DENIED**.

s/Thomas L. Ludington<br>THOMAS L. LUDINGTON<br>United States District Judge

Dated: May 24, 2019